**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **MAURICE STROMAN,** | : | **CIVIL NO. 1:16-CV-2543** |
| | : | |
| **Plaintiff** | : | **(Chief Judge Conner)** |
| | : | |
| **v.** | : | |
| | : | |
| **JOHN WETZEL**, *et al.*, | : | |
| | : | |
| **Defendants** | : | |

## MEMORANDUM

Plaintiff Maurice Stroman ("Stroman"), an inmate who, at all relevant times, was housed at the State Correctional Institution at Huntingdon, Pennsylvania ("SCI-Huntingdon"), commenced this action pursuant to 42 U.S.C. § 1983. (Doc. 1). The matter is proceeding *via* an amended complaint. (Doc. 37). Named as defendants are Secretary Wetzel, Superintendent Tice, Lieutenant Eberling, and Correctional Officer Hemcher. (Id.) Stroman alleges that defendants violated his constitutional rights under the First, Fifth, Eighth, and Fourteenth Amendments when oleoresin capsicum ("OC") spray was released on his housing block on two occasions, traveled through the air ventilation system, entered Stroman's cell, and caused him to suffer an asthma attack. (Id.)

Presently ripe for disposition is defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, for summary

judgment pursuant to Federal Rule of Civil Procedure 56[1]. (Doc. 41). For the reasons set forth below, defendants' motion for summary judgment will be granted in part and denied in part, and the motion to dismiss will be granted.

## I. **Legal Standards**

### A. **Summary Judgment Standard of Review**

Through summary adjudication the court may dispose of those claims that do not present a "genuine issue as to any material fact" and for which a jury trial would be an empty and unnecessary formality. See FED. R. CIV. P. 56(a), (c). The burden of proof is upon the nonmoving party to come forth with "affirmative evidence, beyond the allegations of the pleadings," in support of its right to relief. Pappas v. City of Lebanon, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004); FED. R. CIV. P. 56(e); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). This evidence must be adequate, as a matter of law, to sustain a judgment in favor of the nonmoving party on the claims. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-57 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-89 (1986); see also FED. R. CIV. P. 56(c), (e). Only if this threshold is met may the cause of action proceed. Pappas, 331 Supp. 2d at 315.

---

[1] Defendants contend that Stroman failed to properly exhaust the available administrative remedies with respect to certain claims in the amended complaint prior to filing this action. Because defendants rely on documents outside the pleadings to support this argument, the court will address the exhaustion argument under the summary judgment standard. Furthermore, by order dated October 30, 2018, the court placed the parties on notice that it may consider exhaustion in its role as fact finder under Small v. Camden County, 728 F.3d 265 (3d Cir. 2013). (Doc. 50) (citing Paladino v. Newsome, 885 F.3d 203 (3d Cir. 2018)). The order also afforded the parties the opportunity to supplement the record with any additional evidence relevant to exhaustion of administrative remedies. (Id.)

**B.     Motion to Dismiss Standard of Review**

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of complaints that fail to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6).  When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept as true all [factual] allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff."  Kanter v. Barella, 489 F.3d 170, 177 (3d Cir. 2007) (quoting Evancho v. Fisher, 423 F.3d 347, 350 (3d Cir. 2005)).  Although the court is generally limited in its review to the facts contained in the complaint, it "may also consider matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case."  Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n. 2 (3d Cir. 1994); see also In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997).

Federal notice and pleading rules require the complaint to provide "the defendant notice of what the . . . claim is and the grounds upon which it rests." Phillips v. Cty. of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  To test the sufficiency of the complaint in the face of a Rule 12(b)(6) motion, the court must conduct a three-step inquiry.  See Santiago v. Warminster Twp., 629 F.3d 121, 130-31 (3d Cir. 2010).  In the first step, "the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" Id. (quoting Ashcroft v. Iqbal, 556 U.S. 662, 675 (2009)).  Next, the factual and legal elements of a claim should be separated; well-pleaded facts must be accepted as true, while mere legal conclusions may be disregarded.  Id.; see also Fowler v.

3

UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009).  Once the well-pleaded factual allegations have been isolated, the court must determine whether they are sufficient to show a "plausible claim for relief."  Iqbal, 556 U.S. at 679 (citing Twombly, 550 U.S. at 556); Twombly, 550 U.S. at 555 (requiring plaintiffs to allege facts sufficient to "raise a right to relief above the speculative level").  A claim "has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 556 U.S. at 678.

## II.    Allegations of the Amended Complaint

Stroman alleges that defendants violated his constitutional rights under the First, Fifth, Eighth, and Fourteenth Amendments when OC spray was released on his housing block on two separate occasions.  (Doc. 37).  Stroman asserts that he is a known asthmatic and suffered asthma attacks after inhaling the OC spray.  (Id. at ¶¶ 9, 10, 21).

On August 17, 2015, defendant Eberling allegedly authorized the unannounced use of OC spray on Stroman's housing block before the air handlers were secured.  (Id. at ¶ 10).  Stroman alleges that the OC spray traveled through the air ventilation system, into his cell, and caused him to suffer an asthma attack.  (Id. at ¶¶ 10, 14).  During this incident, Stroman used his inhaler, but continued to suffer from breathing complications.  (Id. at ¶ 12).  Defendant Hemcher allegedly approached Stroman's cell and inquired about his difficulty breathing.  (Id.)  Stroman informed defendant Hemcher that he suffers from asthma and was having

difficulty breathing.  (Id.)  Stroman alleges that defendant Hemcher walked away from the cell and told other inmates that Stroman was sitting on his bed and was alright.  (Id. at ¶ 13).  After defendant Hemcher left the area, Stroman continued to have difficulty breathing and eventually lost consciousness.  (Id. at ¶ 14).  Stroman asserts that correctional officers and defendant Eberling were present when he regained consciousness.  (Id. at ¶ 15).  Stroman alleges that he was roughly handcuffed and shackled, and assessed by a nurse.  (Id.)  The nurse administered an Albuterol inhaler and placed Stroman on sick call for the following day.  (Id.)

Stroman filed a grievance concerning the August 17, 2015 incident.  (Id. at ¶ 16).  In the grievance, Stroman named all individuals that he was able to remember at the time of filing the grievance.  (Id.)  Defendant Eberling denied the grievance on initial review.  (Id. at ¶ 20).  Stroman alleges that defendant Eberling should not have responded to the initial grievance because he was involved in the incident. (Id.)  Stroman fully exhausted this grievance.  (Id. at ¶ 28).

On August 18, 2015, a physician's assistant diagnosed Stroman with an upper respiratory infection and placed him on cough medicine.  (Id. at ¶ 17).  After his exposure to the OC spray on August 15, 2017, Stroman suffered from headaches, throat pain, and chest pain.  (Id. at ¶¶ 18, 19).

On April 10, 2016, Stroman alleges that defendant Eberling again authorized the unannounced use of OC spray on his housing block before the air handlers were secured.  (Id. at ¶ 21).  The OC spray allegedly traveled through the air ventilation system, into Stroman's cell, and caused him to suffer an asthma attack.  (Id.)  A

nurse subsequently treated Stroman with a respirator, but allegedly ignored Stroman's complaints related to his throat.  (Id. at ¶¶ 22, 23).

Stroman filed a grievance concerning the April 10, 2016 incident.  (Id. at ¶ 24).  On May 3, 2016, the Facility Grievance Coordinator denied the grievance on initial review.  (Doc. 26-1 at 19).  Stroman filed an appeal to the Facility Manager.  (Doc. 37 ¶ 20).  On May 27, 2016, defendant Tice upheld the response of the grievance officer.  (Id.)  On May 26, 2016, Stroman was transferred out of SCI-Huntingdon to a different facility and allegedly did not receive defendant Tice's grievance response until July 13, 2016.  (Id. at ¶ 25).  Also on July 13, 2016, Stroman filed an appeal to the Secretary's Office of Inmate Grievances and Appeals ("SOIGA").  (Id.)  Stroman avers that he did not receive a response from the SOIGA.  (Id. at ¶ 27).  Stroman wrote a subsequent letter to the SOIGA on September 6, 2016, inquiring about the status of his appeal.  (Id.)  On September 13, 2016, the SOIGA informed Stroman that the office never received his appeal and any further attempt to appeal would likely be deemed untimely.  (Id.)

On August 26, 2016, Stroman was transported to an outside hospital due to ongoing complications with his asthma, which he alleges began with his exposure to OC spray on August 17, 2015 and April 10, 2016.  (Id. at ¶¶ 26, 29).  Stroman was subsequently diagnosed with Hypertrophic Cardiomyopathy and continues to take medication for his asthma, heart condition, and high blood pressure.  (Id.)

## III.  Discussion

### A.  Exhaustion of Administrative Review

Defendants Wetzel, Tice, and Eberling argue that Stroman failed to properly exhaust the claims against them and failed to exhaust any claims stemming from events on dates other than August 17, 2015.  (Doc. 42 at 15-21).  Under the Prison Litigation Reform Act of 1996 (the "PLRA"), a prisoner is required to pursue all avenues of relief available within the prison's grievance system before bringing a federal civil rights action concerning prison conditions.  See 42 U.S.C. § 1997e(a); Booth v. Churner, 206 F.3d 289, 291 (3d Cir. 2000).  This "exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  Porter v. Nussle, 534 U.S. 516, 532 (2002).  The exhaustion requirement is mandatory.  See Williams v. Beard, 482 F.3d 637, 639 (3d Cir. 2007); see also Booth v. Churner, 532 U.S. 731, 741 (2001) (holding that the exhaustion requirement applies to grievance procedures "regardless of the relief offered through administrative procedures"); Nyhuis v. Reno, 204 F.3d 65, 67 (3d Cir. 2000) (same).  "[I]t is beyond the power of [any] court . . . to excuse compliance with the exhaustion requirement."  Id. at 73 (quoting Beeson v. Fishkill Corr. Facility, 28 F. Supp. 2d 884, 894-95 (S.D.N.Y. 1998)).

To exhaust administrative remedies an inmate must comply with all applicable grievance procedures and rules.  See Spruill v. Gillis, 372 F.3d 218, 231 (3d Cir. 2004).  The PLRA requires not only technical exhaustion of administrative remedies, but also substantial compliance with procedural requirements.  Id. at 227-

32; see also Nyhuis, 204 F.3d at 77-78. A procedural default by the prisoner, either through late or improper filings, bars the prisoner from bringing a claim in federal court unless equitable considerations warrant review of the claim. Spruill, 372 F.3d at 227-32; see also Camp v. Brennan, 219 F.3d 279 (3d Cir. 2000). Failure to identify a named defendant on a grievance form, absent a "justifiable excuse," constitutes failure to properly exhaust as to that defendant. Williams v. Pa. Dep't of Corr., 146 F. App'x 554, 557 (3d Cir. 2005) (non-precedential).

The DOC has an Inmate Grievance System, set forth in DC-ADM 804, which permits any inmate to seek review of problems that may arise during the course of confinement. See 37 PA. CODE § 93.9(a); PA. DEP'T OF CORR., No. DC-ADM 804. After an attempt to resolve any problems informally, an inmate may submit a written grievance to the Facility's Grievance Coordinator for initial review. This must occur within fifteen days after the events upon which the claims are based. Within fifteen days of an adverse decision by the Grievance Coordinator, an inmate may then appeal to the Facility Manager of the institution. Thereafter, within fifteen days of an adverse decision by the Facility Manager, an inmate may file a final appeal to the Secretary's Office of Inmate Grievances and Appeals. An appeal to final review cannot be completed unless an inmate complies with all established procedures. An inmate must exhaust all three levels of review and comply with all procedural requirements of the grievance review process in order to fully exhaust an issue. See Booth, 206 F.3d at 293 n. 2 (outlining Pennsylvania's grievance review process); Ingram v. SCI Camp Hill, 448 F. App'x 275, 279 (3d Cir. 2011) (same).

8

## 1.    *Grievance Number 582260*

Michael "Skip" Bell, a grievance officer in the Secretary's Office of Inmate

Grievances and Appeals, submitted a declaration under penalty of perjury stating

that, based on a review of the SOIGA files, Stroman fully exhausted his grievance

regarding the August 17, 2015 incident involving OC spray, but did not name

defendants Wetzel, Tice, or Eberling in his initial grievance.  (Doc. 42-1 at 5,

Declaration of Michael "Skip" Bell ("Bell Decl.") ¶¶ 17, 18).  Accompanying Bell's

declaration are copies of the relevant institutional administrative remedy records.

(Doc. 42-1 at 7-88).

On August 17, 2015, Stroman filed grievance number 582260 regarding the

incident involving the use of OC spray on that same date.  (Doc. 37 ¶ 16; Bell Decl. ¶

18; Doc. 42-1 at 85).  The grievance was denied at all levels of review.  (Doc. 37 ¶¶ 16,

28; Bell Decl. ¶ 18; Doc. 42-1 at 85-88).  Although Stroman pursued this grievance to

final review, defendants argue that he failed to name Wetzel, Tice, or Eberling in

the initial grievance, and thus procedurally defaulted his claims against them.  (Doc.

42 at 18).  Defendants further argue Stroman did not name Eberling until the

grievance appeal, and only complained that Eberling should have recused himself

from the grievance process because he was involved in the incident.  (Id. at 19).

In Spruill, the Court explained that the purpose of the DOC regulation

related to exhaustion is to put the prison officials on notice of the persons claimed

to be guilty of wrongdoing.  Spruill, 372 F.3d at 234.  Under Spruill, it is the

plaintiff's burden to explain why he did not name a defendant in the grievance.  See

id. Stroman asserts that when he filed his initial grievance, he named all the individuals that he was able to remember at that point in time. (Doc. 37 ¶ 16). Stroman maintains that he was sleeping when he first inhaled the OC spray, there was a "Quad Divider" obstructing his view and ability to identify all individuals involved, and he ultimately lost consciousness further hindering his ability to identify the individuals involved. (Id.) The court finds that Stroman has offered a "justifiable excuse" for failing to name Wetzel, Tice, and Eberling in the initial grievance. See Williams, 146 F. App'x at 557.

Furthermore, the Third Circuit Court of Appeals has held that all that is necessary to defeat a procedural default is that the prison is able, from the initial grievance, to "identif[y] the unidentified persons and acknowledg[e] that they were fairly within the compass of the prisoner's grievance." Williams, 482 F.3d at 640 (quoting Spruill, 372 F.3d at 234); see also Robinson v. Johnson, 343 F. App'x 778 (3d Cir. 2009) (reversing the grant of summary judgment and finding that even if Robinson had procedurally defaulted his claims against defendants by failing to identify them in his grievance, the prison's grievance process excused those procedural defaults); Diaz v. Palakovich, 448 F. App'x 211, 215 (3d Cir. 2011) (holding that summary judgment for the defendants was improper where the defendants had knowledge through the grievance process of an alleged ongoing practice of improper handling of the plaintiff's mail and the defendants failed to take corrective action). Although Stroman was unable to identify the exact individuals involved in the incident involving the use of OC spray, his fully exhausted grievance more than adequately comports with the reasoning that "the

primary purpose of the grievance is to alert prison officials to a problem, not to provide personal notice to a particular official that he may be sued." Williams, 482 F.3d at 640 (quoting Jones v. Bock, 549 U.S. 199, 219 (2007)). As a consequence, the court will deny defendants' motion for summary judgment based on failure to exhaust the claims against Wetzel, Tice, and Eberling.

### 2. *Grievance Number 622195*

On April 10, 2016, Stroman filed grievance number 622195 regarding the incident involving the use of OC spray on that same date. (Doc. 37 ¶ 24; Doc. 48-1 at 2, 3). In the grievance, Stroman alleged that defendant Eberling ordered the use of OC spray in his housing unit, causing him to have an asthmatic reaction. (Doc. 48-1 at 2, 3). On May 3, 2016, the Facility Grievance Coordinator denied the grievance on initial review. (Doc. 26-1 at 19). On May 6, 2016, Stroman filed an appeal to the Facility Manager. (Id. at 20). On May 27, 2016, defendant Superintendent Tice upheld the response of the grievance officer. (Id. at 21). On May 26, 2016, Stroman was transferred out of SCI-Huntingdon to a different facility and did not receive defendant Tice's grievance response until July 13, 2016. (Doc. 37 ¶ 25). On that same date, July 13, 2016, Stroman purportedly appealed this denial to the SOIGA. (Id.) An appeal of the Superintendent's decision, if timely and directed to the proper party, would satisfy the requirements for exhaustion under the procedures outlined in DC-ADM 804. However, on September 13, 2016, in response to Stroman's inquiry, the SOIGA informed him that the office never received his appeal and any further attempt to appeal would likely be deemed untimely. (Id.; Doc. 26-1 at 24). Stroman did not further attempt to appeal this grievance.

11

Defendants have submitted the signed declaration by Michael Bell, a grievance officer for the SOIGA. Therein, he states that based upon his review of the SOIGA records, the only relevant grievance that Stroman appealed to final review is grievance number 582260. (Bell Decl. ¶¶ 17, 18). There is no record of receiving an appeal of grievance number 622195, and no other grievances appealed to the SOIGA involve the use of OC spray. (See id.)

Stroman appears to argue that he should be excused from the requirements of the PLRA because he was transferred to a different facility and unable to exhaust his administrative remedies. However, the Third Circuit Court of Appeals has found that the transfer of an inmate to another facility does not excuse the PLRA's exhaustion requirement. See Williamson v. Wexford Health Sources, Inc., 131 F. App'x 888, 890 (3d Cir. 2005) (affirming grant of summary judgment for failure to exhaust against plaintiff where plaintiff was transferred to a different prison after filing administrative claim, which plaintiff did not appeal). Likewise, the Sixth Circuit stated in Napier v. Laurel Cnty., Ky., 636 F.3d 218 (6th Cir. 2011), "[g]enerally, the transfer of a prisoner from one facility to another does not render the grievance procedures at the transferor facility 'unavailable' for the purposes of exhaustion.'" Id. at 223 (citations omitted). Stroman does not argue that the prison's administrative grievance policy restricts transferred prisoners from completing the administrative review process. (See Doc. 49). Additionally, Stroman acknowledges that administrative remedies remained available to him after the transfer. (See id.)

Furthermore, DC-ADM 804 § 2.B.1.c provides that if an extension of time is sought to file a grievance appeal to final review, "[t]he inmate must notify the Chief Grievance Officer of the reason for the delay." (Doc. 42-1 at 26, 61, DC-ADM 804 § 2.B.1.c). The Chief Grievance Officer will then consider the reason on a case by case basis and, if the reason is deemed acceptable, an extension of time will be granted. (Id.) Here, Stroman was required to appeal defendant Tice's May 26, 2016 grievance denial within fifteen (15) working days of the decision. (Doc. 26-1 at 21). Stroman admits that his purported appeal of defendant Tice's decision was dated and handed in on July 13, 2016, well beyond the fifteen (15) day deadline. Stroman was therefore required to request an extension of time to file his appeal to final review, which he failed to do. Even if the SOIGA had received Stroman's July 13, 2016 appeal to final review, the appeal did not comply with DC-ADM 804 because Stroman did not request an extension of time and did not include the reason for the delay in filing his appeal to final review. (Doc. 26-1 at 22).

In sum, Stroman has not presented evidence to support any contention that his failure to exhaust administrative remedies with respect to grievance number 622195 should be excused, and his transfer out of SCI-Huntingdon is not a sufficient excuse for his failure to do so. Because the evidence establishes that Stroman failed to exhaust available administrative remedies as to the claims in grievance number 622195, defendants will be granted summary judgment on this claim.

## B.    Official Capacity Claims

Defendants argue that any claims seeking monetary damages against them in their official capacities are barred by the Eleventh Amendment.  (Doc. 42 at 24-26). Personal capacity suits under section 1983 seek to recover money from a government official, as an individual, for acts performed under color of state law. Official capacity suits, in contrast, generally represent an action against an entity of which the government official is an agent.  Gregory v. Chehi, 843 F.2d 111, 120 (3d Cir. 1988); see Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690 n. 55 (1978).  When suits are brought against state officials in their official capacities, those lawsuits are treated as suits against the state.  Hafer v. Melo, 502 U.S. 21, 25 (1991).  However, the doctrine of sovereign immunity, established by the Eleventh Amendment, protects states, such as the Commonwealth of Pennsylvania, from suits by citizens. Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89, 100-01, 117 (1984); Seminole Tribe v. Florida, 517 U.S. 44, 54, 116 S.Ct. 1114, 1122, 134 L.Ed.2d 252, 265 (1996); Lavia v. Pennsylvania, 224 F.3d 190, 195-96 (3d Cir. 2000).  That immunity runs to state officials if they are sued in their official capacity and the state is the real party upon which liability is to be imposed.  Scheuer v. Rhodes, 416 U.S. 232, 237-38 (1974).  Congress has not abrogated the immunity regarding Stroman's claims, nor has Pennsylvania waived this grant of immunity.  See 42 PA. STAT. ANN AND CONS. STAT. ANN. § 8521(b).  Hence, Stroman's claims for money damages against the defendants in their official capacities are barred by sovereign immunity. See Betts v. New Castle Youth Dev. Ctr., 621 F.3d 249, 254 (3d Cir. 2010).

## C.    Constitutional Claims

Section 1983 of Title 42 of the United States Code offers private citizens a cause of action for violations of federal law by state officials.  See 42 U.S.C. § 1983. The statute provides, in pertinent part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

Id.; see also Gonzaga Univ. v. Doe, 536 U.S. 273, 284-85 (2002); Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996).  To state a claim under § 1983, a plaintiff must allege "the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."  West v. Atkins, 487 U.S. 42, 48 (1988).

### 1.    *Personal Involvement*

Defendants Wetzel and Tice seek to dismiss the claims against them based on Stroman's failure to set forth sufficient allegations of their personal involvement in the alleged wrongful conduct.  (Doc. 42 at 20).  Individual liability can be imposed under section 1983 only if the state actor played an "affirmative part" in the alleged misconduct and "cannot be predicated solely on the operation of respondeat superior."  Evancho, 423 F.3d at 353) (quoting Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1998)).  "A defendant in a civil rights action must have personal involvement in the alleged wrongs. . . .  Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence."  Rode,

845 F.2d at 1207-08; see also Rizzo v. Goode, 423 U.S. 362 (1976); Atkinson v. Taylor, 316 F.3d 257 (3d Cir. 2003). Such allegations, however, must be made with appropriate particularity in that a complaint must allege the particulars of conduct, time, place, and person responsible. Evancho, 423 F.3d at 354; Rode, 845 F.2d at 1207-08. Alleging a mere hypothesis that an individual defendant had personal knowledge or involvement in depriving the plaintiff of his rights is insufficient to establish personal involvement. Rode, 845 F.2d at 1208.

The amended complaint does not allege that defendants Wetzel or Tice were personally involved in any of the alleged wrongs. Stroman acknowledges that he is suing Secretary Wetzel and Superintendent Tice because, as supervisors, they are purportedly liable for the actions of their subordinates. (Doc. 37 ¶¶ 32, 33). Stroman's claims are, in essence, nothing more than an assertion of *respondeat superior* liability which seeks to hold these defendants liable based on their supervisory roles. This ground of constitutional liability has been squarely rejected by the courts. See Rode, 845 F.2d at 1207. Consequently, defendants' motion to dismiss on the basis of lack of personal involvement of Wetzel and Tice will be granted.

To the extent that Stroman attempts to hold Superintendent Tice liable based on his involvement in the grievance procedure, this claim also fails. (Doc. 37 ¶ 24). Inmates do not have a constitutional right to prison grievance procedures. Lions v. Wetzel, No. 1:13-cv-2952, 2015 WL 2131572, at *6 (M.D. Pa. May 6, 2015). The filing of a grievance, participation in "after-the-fact" review of a grievance, or dissatisfaction with the response to an inmate's grievance, do not establish the

involvement of officials and administrators in any underlying constitutional deprivation. See Rode, 845 F.2d 1195, 1207 (3d Cir. 1998) (supervisory liability where a defendant, after being informed of the violation through the filing of grievances, reports or appeals, failed to take action to remedy the alleged wrong is not enough to show that the defendant has the necessary personal involvement); Pressley v. Beard, 266 F. App'x 216, 218 (3d Cir. 2008) (not precedential) ("The District Court properly dismissed these defendants and any additional defendants who were sued based on their failure to take corrective action when grievances or investigations were referred to them."); Brooks v. Beard, 167 F. App'x 923, 925 (3d Cir. 2006) (not precedential) (holding that allegations that prison officials responded inappropriately to inmate's later-filed grievances do not establish the involvement of those officials and administrators in the underlying constitutional deprivation). Thus, Stroman's attempt to establish liability against Superintendent Tice based upon his denial of the grievance does not support a constitutional claim and this claim will be dismissed. See Alexander v. Gennarini, 144 F. App'x 924, 925 (3d Cir. 2005) (involvement in post-incident grievance process not a basis for liability).

### 2. *First Amendment*

The only First Amendment claim that can be gleaned from the amended complaint is Stroman's bare allegation that defendants violated his "First Amendment right to grieve." (Doc. 37 ¶¶ 1, 30). As stated *supra*, inmates do not have a constitutional right to a prison grievance procedure. See Jones v. N.C. Prisoners' Labor Union, Inc., 433 U.S. 119, 137-138, 97 S.Ct. 2532, 53 L.Ed.2d 629 (1977); Wilson v. Horn, 971 F.Supp. 943, 947 (E.D. Pa. 1997), aff'd, 142 F.3d 430 (3d

Cir. 1998); <u>Rivera v. Pa. Dep't of Corr.</u>, 346 F. App'x 749, 751 (3d Cir. 2009). Further, "the state creation of such a procedure does not create any federal constitutional rights." <u>Wilson</u>, 971 F.Supp. at 947. Prisoners have the right to seek redress of their grievances from the government, but that right is the right of access to the courts. <u>Wilson</u>, 971 F.Supp. at 947. The right of access to the courts is not compromised by prison officials' failure to address the inmate's grievances. <u>Id.</u>; <u>see</u> <u>also</u> <u>Hoover v. Watson</u>, 886 F.Supp. 410, 418-19 (D. Del. 1995), <u>aff'd</u>, 74 F.3d 1226 (3d Cir. 1995). Stroman does not allege that defendants interfered with his right of access to the courts. Consequently, because Stroman has no constitutionally protected right to the prison grievance process, and fails to state any claim related to the handling of his grievances, his bare allegation that defendants violated his "First Amendment right to grieve" will be dismissed. (Doc. 37 ¶¶ 1, 30).

### 3.  *Fifth Amendment*

The Fifth Amendment provides, *inter alia*, that no person "shall be deprived of life, liberty, or property without due process of law." U.S. CONST. amend. V. However, "the due process clause under the Fifth Amendment only protects against federal governmental action and does not limit the actions of state officials." <u>Caldwell v. Beard</u>, 324 F. App'x 186, 189 (3d Cir. 2009); <u>Postie v. Frederick</u>, 2015 WL 1219263, *4 (M.D. Pa. 2015). Stroman sets forth claims against employees of the Pennsylvania Department of Corrections pursuant to 42 U.S.C. § 1983. Stroman does not set forth any allegations against the federal government or federal officials. Because the due process clause of the Fifth Amendment only applies to federal

officials, Stroman cannot maintain a Fifth Amendment claim against defendants and this claim will be dismissed.

### 4. *Fourteenth Amendment*

#### a. <u>Procedural Due Process Claim</u>

Stroman alleges that his Fourteenth Amendment procedural due process rights were violated in the context of the prison grievance procedure. (Doc. 37 ¶¶ 1, 30). Such a claim has no merit because prisoners do not have a constitutionally protected right to prison grievance procedures. <u>Rivera</u>, 346 F. App'x at 751; <u>see</u> <u>also</u> <u>Heleva v. Kramer</u>, 214 F. App'x 244, 247 (3d Cir. 2007) (holding the alleged obstruction of grievance procedures by a prison official did not give rise to an independent § 1983 claim). Nor do they have a liberty interest protected by the due process clause in the grievance procedures. <u>See</u> <u>Fears v. Beard</u>, 532 F. App'x 78, 81 (3d Cir. 2013), <u>citing</u> <u>Antonelli v. Sheahan</u>, 81 F.3d 1422, 1430 (7th Cir. 1996) (holding state's inmate grievance procedures do not give rise to a liberty interest protected by the Due Process Clause). Stroman was not deprived of any process. He alleges that he availed himself of the prison grievance procedures and, although he may not agree with the outcome of his grievances, his complaints were aired in the designated forum and assessed by the appropriate officials. Therefore, the Fourteenth Amendment procedural due process claim will be dismissed.

#### b. <u>Substantive Due Process Claim</u>

Defendants argue that, to the extent Stroman raises a Fourteenth Amendment substantive due process claim, this claim is subject to dismissal pursuant to the "more-specific-provision" rule. (Doc. 42 at 22-23). The court agrees.

In adopting the "more-specific-provision-rule" established in <u>County of Sacramento v. Lewis</u>, 523 U.S. 833, 843-44 (1998), the Third Circuit noted that "[u]nder this rule, 'if a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process.' <u>United States v. Lanier</u>, 520 U.S. 259, 272 n. 7, 117 S.Ct. 1219, 137 L.Ed.2d 432 (1997) (clarifying prior holing in <u>Graham v. Connor</u>, 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989))." <u>Betts</u>, 621 F.3d at 260-61. Because Stroman's claims related to the unannounced use of OC spray and his resultant asthma attacks fit squarely within the Eighth Amendment claim, the more-specific-provision rule forecloses any substantive due process claim.

### c. **Equal Protection Claim**

The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. U.S. CONST. amend. XIV; <u>City of Cleburne v. Cleburne Living Ctr.</u>, 473 U.S. 432, 439 (1985) (citing <u>Plyler v. Doe</u>, 457 U.S. 202, 216 (1982)). To state an equal protection claim, a plaintiff must allege that: (1) he or she was a member of a protected class, (2) he or she was treated differently from similarly situated persons outside of his or her protected class, and (3) the resultant discrimination was purposeful or intentional rather than incidental. <u>Tillman v. Lebanon Cty. Corr. Facility</u>, 221 F.3d 410, 423-24 (3d Cir. 2000).

An equal protection claim can also be brought by a "class of one," a plaintiff alleging that he has been "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." Vill. of Willowbrook v. Olech, 528 U.S. 562, 564 (2000); Williams v. Morton, 343 F.3d 212, 221 (3d Cir. 2003); see also Jean-Pierre v. Bureau of Prisons, 497 F. App'x 164, 168 (3d Cir. 2012). If a distinction between persons does not implicate a suspect or quasi-suspect class, state action will be upheld if it is rationally related to a legitimate state interest. See Tillman, 221 F.3d at 423.

Stroman seemingly asserts that defendants violated his right to equal protection when they denied his grievances. (Doc. 37 ¶¶ 1, 30). Stroman does not state that he is a member of a protected class. Indeed, prisoners are not a protected class of individuals. See Abdul-Akbar v. McKelvie, 239 F.3d 307, 317 (3d Cir. 2001) (stating that prisoners are not a suspect class). Therefore, Stroman's claim survives only if he has properly stated a violation of his equal protection rights under a class-of-one theory. To survive under the class-of-one theory, Stroman must allege facts showing that he has been treated differently from similarly situated inmates, that the defendants did so intentionally, and that this difference in treatment bears no rational relation to any legitimate penological interest. Phillips, 515 F.3d at 243. When alleging the existence of similarly situated individuals, plaintiffs "cannot use allegations . . . that amount to nothing more than 'conclusory, boilerplate language' to show that he may be entitled to relief," and "bald assertion[s] that other[s] . . . were treated in a dissimilar manner" will not survive dismissal. Young v. New Sewickley Twp., 160 F. App'x 263, 266 (3d Cir. 2005) (citing Evancho, 423 F.3d at

354-55); see also Twombly, 550 U.S. at 561 (requiring more than a "wholly conclusory statement of claim" to survive a motion to dismiss). Instead, plaintiffs must identify similarly situated individuals and allege "occasions or circumstances" of differential treatment. Young, 160 F. App'x at 266; see also Twombly, 550 U.S. at 563 (requiring a plaintiff to plead a set of facts consistent with legal allegations in complaint to survive dismissal).

In the amended complaint, Stroman generally alleges defendants violated his equal protection rights. (See Doc. 37 ¶¶ 1, 30). Stroman identifies no other inmates who were similarly situated to him that were treated differently by defendants. The allegations in the amended complaint are simply "bald assertions" that do not allege "occasions and circumstances" of differential treatment. Young, 160 F. App'x at 266. Because Stroman has not stated the existence of similarly situated individuals sufficient to support a class-of-one claim, the equal protection claim will be dismissed.

### D.    State Law Claim

Defendants seek dismissal of Stroman's state law claim of defamation on the basis of sovereign immunity. (Doc. 42 at 24-26). State prison officials are immune from suit for those actions within the scope of their duties, except in instances in which the immunity has been specifically waived. See 1 PA. CONS. STAT. ANN. § 2310. The allegations of Stroman's amended complaint do not fall under any one of the nine listed categories for which immunity has been waived by the

Commonwealth of Pennsylvania.[2]  See 42 PA. CONS. STAT. ANN. § 8522(b).  As such, defendants are entitled to immunity on the state law claim and their motion will be granted in this regard.

**IV.    Conclusion**

For the reasons set forth above, defendants' motion for summary judgment will be granted in part and denied in part, and the motion to dismiss will be granted.  An appropriate order will issue.

/S/ CHRISTOPHER C. CONNER
Christopher C. Conner, Chief Judge
United States District Court
Middle District of Pennsylvania

Dated:        February 26, 2019

---

[2] The nine categories for which sovereign immunity will not apply are: (1) vehicles in the possession or control of a Commonwealth party; (2) acts of health care employees of Commonwealth agency medical facilities or institutions; (3) the care, custody, or control of personal property; (4) a dangerous condition of Commonwealth agency real estate and sidewalks; (5) dangerous conditions of highways created by potholes or sinkholes; (6) the care, custody, or control of animals; (7) liquor store sales; (8) National Guard activities; and (9) toxoids and vaccines.  See 42 PA. CONS. STAT. ANN. § 8522(b).